Robert M. Herz
Law Offices of Robert Herz, P.C.
431 W. 7th Avenue, Suite 107
Anchorage, Alaska 99501
907-277-7171 Ph. / 907-277-0281 Fx.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 3:19-cr-00110-RRB |
| | ) | |
| Lavern Davidhizar, | ) | |
| | ) | |
| Defendant. | ) | |

**SUPPLEMENTAL DECLARATION OF JEFFREY M. FISCHBACH**

I, Jeffrey M. Fischbach, declare as follows:

1.      Unfortunately, and contrary to his Declaration, Mr. Nunamaker does not

understand the objectives the Defendant seeks to achieve in order to effectively

prepare for trial. While I do appreciate Mr. Nunamaker's attempt to interpret the

Defendant's objectives, he clearly misunderstood, or possibly interprets the

Defendant's needs to be similar to the investigation performed by the government. Mr.

Nunamaker summarizes his interpretation of the defense objectives as follows: *"The*

*basis of the request is to allow the defense to easily import the native files into their*

*review software, Trial Director, to review and search the files."*

2.      While certainly one defense objective is to import native files into trial

preparation software where feasible. The means to that end are not as the government

suggests, specifically for the reasons the government articulates in Mr. Nunamker's

declaration. As noted by the government, unlike a Microsoft Word file, Trial Director

software will not directly import some of the files and databases, e.g. eClinicalWorks,

contained within the E01 files preserved by the government. Therefore, as one

example, it would be necessary to operate eClinicalWorks in its native environment, which cannot be done while contained in an E01 file container.

3.      The government's examples highlight the ease at which a single, simple, well-known, individual file could be "cherry picked", and easily extracted from an E01. In no way do I disagree with the ease of performing that, one, very simple task. From their Declaration, it is clear that the government is well aware that while the E01's in question may contain some simple files, similar to their example, they also contain much more complicated collections of interdependent files and databases. Those files and databases can only be opened in their native format, in their original native file structure, which requires a precise clone of the original hard drive, and proprietary software, like eClinicalWorks which is also contained within the E01's in question.

4.      As Mr. Walker has disclosed, I have conceded that "there is nothing inherently problematic about E01 file format." As well, I answered questions posed by the Court and by Mr. Walker himself, affirming that the trial preparation software used by Mr. Herz could not read files stored within the E01 format. I did not, however, state that *any* software, other than eClinicalWorks -- including any forensic software -- could read, or otherwise utilize, an eClinicalWorks database.

5.      In the simplest sense, Mr. Nunamaker testified that extracting original "clone" drives from the E01 files the government produced is difficult and time consuming. Yet, the government invested time producing a video demonstrating to the court how easy it would be for the defense team to do what the government wants the defense team to do. What the government demonstrates is how easy it is to extract specific data based on the government's mistaken belief that is what the defense needs to do. It is akin to a customer returning to a mechanic because their new transmission would not shift into fifth-gear at highway speeds, and instead of remedying that situation, the

mechanic simply provided a map to many local destinations that do not require use of the highway and fifth gear.

6.      Mr. Nunamaker states the following in his Declaration: "My understanding is that the defense wants to be able to search all files in their native format. However, I do not believe that granting the Motion will achieve this result for several reasons. (a) First, in general, there are some file types that cannot be read outside of their applications. Therefore, insofar as the evidence in this case may include such files, the defense would likely not be able to find contents using keyword searches. For example, many of the medical records in this case were made in eClinicalWorks. Based on my training and experience, I know that files in eClinicalWorks format are not practically useful when responding to keyword searching. Thus, for example, if the defense searched for patient 'John Doe,' the defense would not likely find complete medical records for that patient."

7.      As in the hearing on this issue, the government continues to presume that the defense is conducting forensic "keyword searches". ('Keyword search" is a term of art referring to methods taught for the use of forensic software.) As previously stated under oath, the defense counsel has not asked me to conduct a forensic search of evidence seized by the government, but rather to assist in counsel's being able to access that information natively.

8.      Mr. Nunamaker continues, "Second, the original evidence was preserved on virtual machines. For technical reasons, files contained on virtual machines are no more searchable in native format than they are in E01 file format for most aplications (sic)." Again, the government presumes that the defense has elected to forensically search the contents of the E01 files, rather than simply access applications, files, and data in their native format.

9.      Herein, Mr. Nunamaker's knowledge of "virtual machines," that they are "no more searchable in native format than they are in E01 file format," further exemplifies why the extraction of E01 files is best performed by the individual(s) responsible for creating them. Had I been retained to perform a forensic examination of the government's E01 files in this case, and not been able to forensically search the contents, I would have been entirely reliant upon the government to be forthcoming with details that I am only just learning, via Mr. Nunamker's Declaration to the court, months after being offered access to E01 files.

10.     It has *always* been, and remains my advice to Counsel that this case, in particular, did not necessitate a forensic examination, but rather access to native files, in their native format. The government continues to believe that the defense intends to conduct a forensic examination, and notes that its own presumed forensic protocols would not, or could not work, and why, for that reason, it should not be compelled to return its evidence to its original form.

11.     While this may not be intentional misdirection on the part of the government, it most certainly continues to misrepresent the defense objectives, and supplant them with their own, while simultaneously admitting that the most simple methods it prescribes would be fruitless nonetheless.

12.     In paragraph 13, Mr. Nunamaker states: "Based upon how the eClinicalWorks program saves information, providing the eClinicalWorks files in native file format will not assist the defense in the search and review of the files from eClinicalWorks in a meaningful way. Any reports would have to be created directly from the application eClinicalWorks and will not be found by searching the native files of the exhibits."

13.     While the Defendant is in no way required to disclose trial strategy herein, the government has inadvertently stated clearly what I attempted to explain without disclosing attorney-client communications. For the purposes of preparing for trial, the

defendant's counsel needs access to files which I cannot provide forensically. In order to find, export and link files and data to trial preparation software, the defense needs a working restored hard drive clone.

14.    With respect to the time the government has invested in demonstrating to the court, at length, why the defendant cannot do what the government would anticipate him to do, both parties are describing the same circumstances. As Mr. Nunamaker states in paragraph 16: "The extraction and use of files in eClinicalWorks requires expertise more commonly associated with Information Technology, rather than Computer Forensic expertise. These challenges will exist regardless if the evidence is provided in E01 file format, natives, or restored images."

15.    I agree with Nunamaker's opinion. However, while the use of specialized Electronic Medical Records (EMR) applications is as specialized in its own right as forensics, it *cannot* be done within an E01 file "container." It must be extracted, in its entirety, into its native file structure and format..

16.    To that end, in order to justify why the government should not be compelled to restore the E01 files to their native format, Mr. Nunamaker describes in Paragraph 17 the availability of a detailed process performed by a DEA examiner, demonstrating how the government has already done, to a limited extent, what the defense has asked them to do. In this case, a DEA specialist was used to extract and restore, just the eClinicalWorks Application and Database, in order to demonstrate that they could do the very thing for themselves, that the government is opposed to providing to the defendant. But, instead, proposes that the Defendant follow instructions to duplicate the efforts of a DEA examiner, in order to produce something that, if done correctly should match identically, what the government has already done.

17. I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, and I hereby reserve the right to amend any statement should additional information be made available to me at a later date.

DATED at Los Angeles, California, this 15th day of October 2020.

_____
Jeffrey M. Fischbach